IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHALYNE RESTIVO-SPINA, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-8252 |
| ) | |
| v. ) | |
| ) | |
| ALVERNO CLINICAL ) | |
| LABORATORIES, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

NOW COMES Plaintiff, CATHALYNE RESTIVO-SPINA, by her attorneys, and alleges the following against Defendant, ALVERNO CLINICAL LABORATORIES, LLC:

**Subject Matter Jurisdiction, Personal Jurisdiction, and Venue**

1. This case arises under the Americans with Disabilities Act, as amended, codified at 42 U.S. Code § 12101, et seq. ("the ADA") and under the Family and Medical Leave Act of 1993, as amended, codified at 29 U.S.C. 207, et seq. (the "FMLA").

2. This Court has subject matter jurisdiction to hear this case under 28 U.S.C. § 1331 (federal question jurisdiction).

3. Alverno Clinical Laboratories, LLC ("Alverno") is an Indiana limited liability company.

4. Alverno provides a wide range of laboratory services to the medical communities of Northwest Indiana and Northern Illinois. Several of its labs are operated out of area hospitals.

5.	This Court has personal jurisdiction over Alverno because its activity (providing laboratory services) in the Northern District of Illinois is continuous and systematic; and this cause of action is related to that activity.

6.	Venue is appropriate here because the events giving rise to this litigation occurred in this District, namely in Evanston, Illinois (where Spina worked).

## Facts

7.	PCL Alverno employs over 500 people.

8.	Spina Cathalyne Restivo-Spina ("Spina") began working for Alverno on September 8, 2015 at St. Francis Hospital in Evanston, Illinois.

9.	Spina is a certified Medical Technologist and has been so-certified since December 1998.

10.	Spina's job title was Medical Technologist Coordinator.

11.	In mid-2016, Spina began having reactions to perfume and cologne in her workplace.

12.	Alverno had a written policy that discouraged the use of "strong scents."

13.	St. Francis had a similar policy.

14.	Spina asked that these policies be enforced.

15.	The policies were not enforced.

16.	On November 16, 2016, Spina became very ill at a management meeting.

17.	In December 2016, Alverno told its staff to "be mindful" when wearing fragrances in the work place but the policy was not actually enforced. Some employees were not pleased and even threatened to quit.

2

18. Spina was hospitalized from December 19-21, 2016 because of allergic reaction, asthma, and asthma bronchitis.

19. On December 20, 2016, Spina requested FMLA leave.

20. Her doctor completed FMLA paperwork, noting allergic reaction, asthma exacerbation, and asthma bronchitis.

21. From December 20, 2016-March 10, 2017, Spina routinely was re-evaluated by medical professionals and shared these updates with her employer.

22. On March 10, 2017, her doctor noted that she was improving and would be re-evaluated on March 24, 2017.

23. That same day, March 10, 2017, Alverno told her that her job was no longer being held open for her, and that her position would be posted "no later than" March 28, 2017.

24. Alverno filled her position on March 17, 2017. Upon information and belief, Alverno took action to fill this position well before that date.

25. On March 24, 2017, she was released to return to work, as of April 3, 2017. Her doctor noted she would need accommodation--no perfumes or scents in persons with whom she came in contact. He built in that window of time, from March 24 to April, so that she could get ADA accommodations in place with Alverno HR as well as her worksite (St. Francis in Evanston, IL) before returning.

26. That day, March 24, 2017, an HR rep said he would check whether these accommodations were possible.

27. Later that day, March 24, 2017, the HR rep told her that her position had been filled already.

28. Spina was not allowed to return to her position on March 24, 2017.

29. Beginning March 27, 2017, Spina began applying for posted Alverno positions through https://jobs.jobvite.com/alverno-laboratories/?nl=1.

30. She applied to at least five.

31. On March 29, 2017, was told she had to bid on open positions and had 30 days to secure one before she would be put on "inactive status."

32. On March 30, 2017, she submitted a written request for reasonable accommodation to Alverno. She wrote that it was submitted because of asthma which affected the major life activity of breathing. She wrote that the reasonable accommodation she was requesting is: "enforcing policy PolicyStat ID: 2638422 good grooming and personal hygiene requirements. The wearing of strong scents…should be avoid. Also stated in PSFH-EVT[1] policy that should refrain from wearing perfumes/cologne in workplace."

33. On April 3, 2017, Spina was told to clear out her desk. When she did so, her Supervisor told her that she should look for work outside the Alverno organization.

34. Spina continued to apply for open positions. She did not get them, despite being highly qualified.

35. On May 19, 2017, Alverno mailed Spina a letter informing she was terminated. She received it May 25, 2017.

36. Spina continued to apply for open positions. She did not get them, despite being highly qualified.

37. Spina filed a Charge of Discrimination with the EEOC[2] on June 13, 2017.

38. Spina continued to apply for jobs with Alverno. She got none of them, despite being highly qualified.

---

[1] Presence St. Francis Health Evanston

[2] Which was given the number 440-2017-04350

4

39. In its July 2017 position statement to the EEOC, Alverno wrote "It is not a stretch that [Spina] could not work in a work space shared with other people, let alone a hospital laboratory filled with multiple smells that are an integral part of that work environment. Her medical conditions are simply so severe that she cannot perform the essential duties of her job."

40. In its October 2017 supplemental position statement, Alverno wrote that Spina had "significant health problems," that "her conditions were wide-ranging and so severe that she often could not work at all," and that she had "an inability to work."

41. In its June 27, 2018 position statement, Alverno wrote that her "significant restrictions seemly [sic] prevented [her] from working in a hospital laboratory."

42. Spina received no job offers from Alverno until June 29, 2018.

43. On June 29, 2018, Spina was offered her old position (MT Coordinator St. Francis Hospital in Evanston).

44. Spina accepted (after requesting the same accommodations she always had, about perfumes).

45. To date, Spina has worked at Alverno without incident, despite Alverno's previous perception that her disability meant that she "could not work in a work space shared with other people, let alone a hospital laboratory," and "could not work at all."

## Count 1: Violation of the ADA

46. Plaintiff re-alleges paragraphs 1-45 as if re-typed here.

47. The ADA protects from discrimination people with disabilities, i.e. those with impairments that substantially limit a major life activity.

5

48. Spina has a disability as defined by the ADA: she is allergic to petrochemicals (fragrances and perfumes) and suffers from asthma. Because of these conditions, Spina's ability to breathe (a "major life activity") is limited.

49. Under Section 12112 of the ADA, no employer shall discriminate against a qualified individual on the basis of disability in regard to discharge, employee compensation, or other terms, conditions, and privileges of employment.

50. Spina is a "qualified individual" as defined by the ADA: she could perform the essential functions of her position.

51. Defendant discriminated against Spina in at least the following ways:

   a. by not enforcing a workplace rule prohibiting perfumes from May-December 2016 which led to her being hospitalized and unable to work from December 19, 2016-March 24, 2017;

   b. by filling her position 2 days after her FMLA leave expired, despite her doctor saying she was improving;

   c. by refusing to put her in her position (or any other open position) when she said she had been released to work but required ADA accommodation (on March 24, 2017);

   d. officially terminating her on May 19, 2017; and/or

   e. refusing to hire her between May 19, 2017 and July 2018, despite numerous applications.

52. Alverno has violated the ADA by discriminating against Spina based on her disability.

53. Spina exhausted her administrative remedies under the ADA:

      a. She filed a Charge of Discrimination[3] with the EEOC (designated as 440-2017-04350) on June 13, 2017; received a right-to-sue letter on September 19, 2019; and is filing this lawsuit within 90 days thereof.

      b. She filed another Charge of Discrimination (440-2018-05417) on May 21, 2018 (adding the post-termination job applications and rejections); received a right to sue letter on September 19, 2019; and is filing this lawsuit within 90 days thereof.

54. As a result of Defendant's violations of the ADA, Spina suffered physically, financially and emotionally.

WHEREFORE, Plaintiff requests that Defendant be held liable under the ADA; and that she be awarded all damages to which she is entitled including compensatory damages, back pay and benefits, prejudgment interest on back pay, front pay (she is making less than she would have been if she had not been off work for 15 months), additional compensation for additional tax Spina will have to pay on a lump sum award punitive damages, attorney's fees, expenses (including expert expenses), and costs.

### Count 2: Retaliation in Violation of the ADA

55. Plaintiff re-alleges paragraphs 1-53 as if re-typed here.

56. Spina engaged in protected activity under the ADA when she filed a Charge of Discrimination with the EEOC (440-2017-04350) on June 13, 2017.

---

[3] Plaintiff filed her charge against Professional Clinical Laboratories LLC dba PCL Alverno. The company retained counsel and submitted a statement saying that Complainant had incorrectly named her employer and that it was actually "Alverno Clinical Laboratories, LLC."

57. After she filed that charge, she applied for any open job she was qualified for with Defendant.

58. She was not hired for any job until she was hired into her old one, in July 2018.

59. She was not chosen for those jobs (or any of them) because she had filed a charge against Defendant.

60. Alverno is liable under the ADA for unlawful retaliation.

61. Spina exhausted her administrative remedies under the ADA: she filed a second Charge of Discrimination (440-2018-05417) on May 21, 2018 (adding retaliation); received a right to sue letter on September 19, 2019; and is filing this lawsuit within 90 days thereof.

62. As a result of Defendant's violations of the ADA, Spina suffered physically, financially and emotionally.

WHEREFORE, Plaintiff requests that Defendant be held liable under the ADA; and that she be awarded all damages to which she is entitled including compensatory damages, back pay and benefits, prejudgment interest on back pay, front pay (she is making less than she would have been if she had not been off work for 15 months), additional compensation for additional tax Spina will have to pay on a lump sum award, punitive damages, attorney's fees, expenses (including expert expenses), and costs.

**Count 3: FMLA Retaliation**

63. Plaintiff re-alleges paragraphs 1-45 as if re-typed here.

64. Section 2615(a)(2) of the FMLA expressly prohibits employers from discharging or otherwise discriminating against any individual for exercising her FMLA rights.

65. The FMLA allows for leave for one's own serious medical condition.

8

66. Spina had a serious medical condition: it required hospitalization. Therefore, her leave was "FMLA-qualifying."

67. Alverno has more than 50 employees. Thus, it is a covered employer under the FMLA.

68. Spina had worked for Alverno 1,250 hours in the past year. Therefore, she was a covered employee under the FMLA.

69. Spina was entitled to take leave under the FMLA.

70. Spina exercised her rights when she applied to take and then took FMLA leave.

71. Alverno formally allowed her to take the leave: it designated her FMLA leave start date as December 19, 2016 and said 12 weeks from December 19, 2016 would be March 13, 2017.

72. Alverno filled her position on or before March 15, 2017.

73. Upon information and belief, Alverno took action to fill this position well before March 13, 2017.

74. She was formally fired on May 19, 2017.

75. Spina lost her position and was then terminated because she had taken FMLA leave.

76. Retaliatory animus is evidenced by:

a. Alverno referring to Spina's time on medical leave as "extensive leave."

b. Alverno's writing that Spina's doctor extended her need to be away from work "time and time again."

77. Alverno violated the FMLA by retaliating against Spina for exercising her FMLA rights.

78. Alverno's violation of the FMLA was willful.

79. As a result of Defendant's violations of the FMLA, Spina lost pay and benefits.

WHEREFORE, Plaintiff requests that Defendant be found liable, that a judgment be entered against it, and that Plaintiff be awarded all remedies to which she is entitled under the law, including: back pay and lost benefits, interest, liquidated damages, additional compensation for additional tax Spina will have to pay on a lump sum award, attorneys' fees, expert witness fees, and costs.

## Jury Demand

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: 12/17/19                             Respectfully submitted by:


s/Julie Herrera

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
jherrera@julieherreralaw.com